# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHYHIRA JACKSON** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-4268** |
| | : | |
| **TRIPLE CANOPY, INC.,** | : | |
| **CONSTELLIS, LLC** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                              **March 13, 2026**

An armed security guard spent approximately two and a half hours a week at work before and after her scheduled shift to check and secure her weapons. She alleges her employer did not pay her for this pre- and post-shift time at work. She sued her employer seeking these wages. She now asks us to conditionally certify a group of employees she claims suffered the same wage loss before and after their work shift contrary to Congress's mandate in the Fair Labor Standards Act. The security guard and her former employer are engaged in discovery but months away from closing discovery with trial confirmed to begin in approximately six months. The former employer opposes conditional certification arguing for a heightened standard applied after substantial discovery and attempts to challenge the merits of the security guard's claim. We decline to apply a heightened standard or scrutinize the merits at this early notice stage. We grant the security guard's Motion for conditional certification with leave to promptly issue an approved notice so other employees may timely choose to join her case before she moves for final certification

## I.    Alleged facts and adduced evidence.

Triple Canopy, Inc. and Constellis, LLC provide armed security services to Naval Support Activity Philadelphia.[1] Shyhira Jackson worked for Triple Canopy and Constellis as an armed security guard from August 2023 until July 2025 at Naval Support Activity Philadelphia.[2] Her

supervisors often scheduled her to work from 5:15 a.m. to 1:30 p.m. and paid her for eight hours and fifteen minutes of work each shift.[3]

Triple Canopy and Constellis required Ms. Jackson to work without pay for fifteen to twenty minutes before each shift began and for ten to fifteen minutes after each shift ended.[4] For example, they required her to check her weapons for safety before her shift began and return her weapons after her shift ended.[5] She usually worked five days per week and estimates spending two and a half hours each week working overtime without pay.[6]

Ms. Jackson seeks overtime wages for her time spent on unpaid pre- and post-shift work. She sues Triple Canopy and Constellis under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, and the Philadelphia Wage Theft Ordinance to recover wages for the approximate two and half hours each week not paid.[7] She also claims other employees did not receive overtime pay for similar activities and seeks to sue on behalf of a collective of employees and a class of employees.[8] We met with counsel over four months ago leading to our Order requiring Ms. Jackson to move for conditional certification in February 2026, with a close of discovery on July 3, 2026, and trial confirmed to begin on September 9, 2026.[9]

## II.     Analysis

Ms. Jackson timely moved to conditionally certify her proposed collective of employees who Triple Canopy and Constellis employed as a "Guard Level 1, Guard Level 2, Guard Level 3, Guard Specialist, Lieutenant, Corporal, Armed Protective Security Officer, or Armed Security Officer at any point in the past three (3) years."[10]

Ms. Jackson argues she makes a modest factual showing Triple Canopy and Constellis applied the same policy she claims affected her—their refusal to pay her for required activities she performed before and after her shifts—to the members of her proposed collective.[11] Triple Canopy

and Constellis respond we should apply a heightened standard of review to Ms. Jackson's proposed collective because the parties started discovery.[12] They argue Ms. Jackson has not shown we should conditionally certify her collective under this heightened standard.[13] We disagree with Triple Canopy and Constellis. We apply the modest factual showing standard of review to Ms. Jackson's motion for conditional certification. We conditionally certify her collective. We approve her proposed notice.

### A. We apply a modest factual showing standard of review to Ms. Jackson's Motion for conditional certification.

Triple Canopy and Constellis ask us to apply an "intermediate standard of review" to Ms. Jackson's Motion for conditional certification because they already started discovery.[14] Ms. Jackson responds we should apply the typical "modest factual showing" standard of review for conditional certification because discovery is not complete, no other employees have opted in yet, and the case is not ready for trial.[15] We agree with Ms. Jackson.

Congress through the Fair Labor Standards Act provides "federal minimum-wage, maximum-hour, and overtime guarantees" for certain employees.[16] For example, Congress requires employers to pay qualifying employees "one and one-half times the employer's regular wage for hours worked in excess of forty hours per week."[17] An employee can sue her employer for violating this requirement if she shows she "worked overtime hours without compensation" and demonstrates "the amount and extent of [her] overtime work."[18] Congress through the Act also allows an aggrieved employee to sue not only on her own behalf, but also on behalf of other employees who are similarly situated to her who consent to join the suit in writing.[19]

We describe cases as a "collective action" when an employee sues on behalf of other similarly situated employees seeking wages under the Act.[20] We apply a "two-step certification process" to determine whether employees are similarly situated.[21] The first step—and the focus

today—is "conditional certification."[22] The employee typically only needs to make a "modest factual showing" there is a "a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."[23] If the named employee makes this showing and we grant conditional certification it allows her to distribute "notice" of the suit "to potential collective action members" and allows other employees the opportunity to opt in to the collective by filing "an affirmative consent to join the collective action."[24] Conditional certification also allows the named employee to engage in discovery to further support collective certification.[25] The second step is "final certification."[26] At the final certification stage the named employee must prove by a preponderance of the evidence the opt-in employees are similarly situated to her.[27]

Some of our colleagues applied an intermediate standard of review at the conditional certification stage where the parties already engaged in discovery.[28] They require a named employee to make "some factual showing" she satisfied the final certification "similarly-situated requirement" instead of making a modest factual showing the offending policy applies to her and the proposed collective[29] For example, Judge Brann in *Sloane* applied an intermediate standard where the parties engaged in significant discovery over years and across multiple cases.[30] But other colleagues caution a "heightened standard" is "not appropriate" at the conditional certification stage "when discovery has not been concluded, no plaintiffs have opted-in, [or] the case is not ready for trial."[31]

We decline to apply an intermediate standard of review to Ms. Jackson's Motion for conditional certification. Triple Canopy and Constellis argue we should apply a heightened standard because the parties have "exchanged written discovery responses, made substantial document productions, and completed depositions" over the past several months.[32] But the parties

still have almost four months remaining for discovery, no other employees opted in to the proposed collective, and the case is not ready for trial. We apply the typical modest factual showing standard to Ms. Jackson's motion for conditional certification.

### B. We conditionally certify Ms. Jackson's proposed collective because she makes a modest factual showing Triple Canopy and Constellis's policy affects her and the proposed collective.

Ms. Jackson claims Triple Canopy and Constellis violated her rights under the Act by refusing to pay her for her work before and after her scheduled guard shifts such as checking out and returning her weapons.[33] We review whether Ms. Jackson makes a modest factual showing of a "factual nexus" between the way this policy affects her and the way it affects the proposed collective members including guards with titles "Guard Level 1, Guard Level 2, Guard Level 3, Guard Specialist, Lieutenant, Corporal, Armed Protective Security Officer, and Armed Security Officer."[34] Ms. Jackson explains "Corporal," "Armed Protective Security Officer," and "Armed Security Officer" are other names for the various guard levels at Naval Support Activity Philadelphia.[35] Triple Canopy and Constellis do not dispute this.[36]

Ms. Jackson makes a modest factual showing Triple Canopy and Constellis's policies similarly affected her and other security guards. She swears lieutenants at Naval Support Activity Philadelphia told her and other guards they needed to arrive at work twenty-five minutes before Triple Canopy and Constellis began paying them.[37] She also swears unidentified persons told her and other guards Triple Canopy and Constellis would only pay them for their scheduled hours.[38] She attaches Triple Canopy's response to an interrogatory asking for information on its policies for tracking employee time.[39] Triple Canopy responded armed guards "generally began their shifts once they were present for the guard mount meeting . . . and generally ended their shift once they were relieved from their post."[40] This response suggests Triple Canopy might rely on scheduled

shifts to track guards' time. And lieutenants are supervisory armed guards.[41] Triple Canopy's interrogatory responses also show it applies its timekeeping policies to lieutenants.[42] This evidence is sufficient to support conditional certification.

Triple Canopy and Constellis point to facts suggesting they pay guards for certain pre- and post-shift activities like arming and disarming.[43] But we cannot weigh evidence or resolve factual disputes when resolving a motion for conditional certification.[44] And despite Triple Canopy and Constellis arguing Ms. Jackson's pre- and post-shift duties might differ from other guards' duties we decline to analyze factors we use at the final certification stage to resolve today's motion for conditional certification.[45] Ms. Jackson makes a modest factual showing of a factual nexus between how Triple Canopy and Constellis's policy affects her and other armed guards.[46] We grant Ms. Jackson's Motion for conditional certification.[47]

### C.  We approve Ms. Jackson's proposed notice.

Ms. Jackson asks us to expedite notice to ensure the Act's statute of limitations period does not bar possible opt-in employees' claims.[48] She asks us to give putative collective members sixty days to opt in.[49] Triple Canopy and Constellis do not challenge Ms. Jackson's requests.[50]

We enjoy "discretionary authority to oversee and facilitate the notice process."[51] We approve Ms. Jackson's proposed notice—including her request to send the notice through physical mail and email—with one modification. Ms. Jackson's proposed notice describes the opt-in period as the "Date of Mailing" the notice plus "60 Days."[52] We direct Ms. Jackson to instead calculate the opt-in period as sixty days from today.

### III.    Conclusion

Ms. Jackson satisfied the modest factual showing sufficient for us to conditionally certify her proposed collective. We accept her proposed notice subject to one modification to the opt-in period and grant her Motion to conditionally certify the collective.

---

[1] *See* ECF 41-3 at 17–18, Sutkaytis Dep. at 16:25–17:11. Triple Canopy is a Constellis subsidiary. *See* ECF 41-3 at 11, Sutkaytis Dep. at 10:6–8. All page numbers for citations beginning with "ECF" are to the CM/ECF pagination system.

[2] *See* ECF 35 at 8 ¶ 42, 10 ¶ 49; ECF 41-4 at 4, Jackson Interrogatory Responses at 3 ¶ 3 (showing Ms. Jackson worked as a "Guard Level 1" from August 2023 until August 2024 and as a "Guard Level 2" from August 2024 until July 2025).

[3] *See* ECF 35 at 10 ¶¶ 51–53.

[4] *See* ECF 35 at 10–11 ¶¶ 54–55 ("[Triple Canopy and Constellis] required [Ms. Jackson] to do the following at her job site [before] 5:15 a.m.: (1) drive through the base entrance area; (2) scan identification badge with entrance guard; (3) drive to locker room facility and enter locker room; (4) don uniforms, bullet proof vests, duty belts, jackets, work boots, and radios; (5) walk to the armory; (6) 'arm up' by filling out weapons log, taking weapons and ammunition, loading ammunition into firearms, and performing weapons safety check; and (7) walk to the area where guard mount takes place . . . ."); *id.* at 11 ¶ 58 ("Plaintiff and Class Plaintiffs spent/spend approximately 15–20 minutes per shift performing these pre-guard-mount activities at their assigned job site(s) but Defendants did/does not count this time towards their total hours worked."); *see also id.* at 11–12 ¶¶ 63–65 (explaining Triple Canopy and Constellis required her to do the following after the end of her scheduled shift at 1:30 p.m.: "(1) exit [her] post[] and drive to the armory; (2) 'download' [her] weapons, i.e., return weapons and ammunition and fill out weapons log; (3) walk to locker room to doff uniforms, bullet proof vests, duty belts, jackets, work boots, and radios; and (4) exit the base premises").

[5] *See id.* at 10–12 ¶¶ 55, 64.

[6] *See id.* at 12 ¶¶ 68–70.

[7] *See id.* at 15–20 ¶¶ 77–93.

[8] *See id.* at 5–10 ¶¶ 30–46.

[9] *See* ECF 32.

[10] *See* ECF 41 at 1 (providing the full definition of the proposed collective as "All persons, who were employed by Triple Canopy, Inc. and/or Constellis, LLC at Naval Support Activity Philadelphia in the positions of Guard Level 1, Guard Level 2, Guard Level 3, Guard Specialist, Lieutenant, Corporal, Armed Protective Security Officer, or Armed Security Officer at any point in the past three (3) years" (emphasis removed)).

[11] *See* ECF 41-1 at 9–14.

[12] *See* ECF 47 at 15–17.

[13] *See id.* at 17–24.

[14] *See id.* at 15–17.

[15] *See* ECF 51 at 4–6.

[16] *See Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)).

[17] *See id.* (citing 29 U.S.C. § 207).

[18] *See id.* (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).

[19] *See Symczyk*, 569 U.S. at 69 (explaining Congress through the Act "gives employees the right to bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the [Act]" (quoting 29 U.S.C. § 216(b))).

[20] *See id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)).

[21] *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

[22] *See id.*

[23] *See id.* (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)); *see also Dunkel v. Warrior Energy Services, Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014) ("In other words, Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way.").

The named employee need only show at this stage the employer subjected the proposed collective members to the same policy; the proposed collective members can hold "different jobs, in different departments, [and] at different locations." *See Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 352 (W.D. Pa. 2018) ("That potential opt-in plaintiffs held different jobs, in different departments, at different locations does not preclude conditional certification because all were subject to the same allegedly unlawful policy." (citing *Beauchamp v. Penn Mut. Life Ins. Co.*, No. 10-7170, 2011 WL 3268161, at *5 (E.D. Pa. July 29, 2011))).

[24] *See Halle*, 842 F.3d at 224–25; *see also Zavala*, 691 F.3d at 536 (explaining granting conditional certification is best understood as an "exercise of [our] discretionary power . . . to facilitate the sending of notice to potential class members" (quoting *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, *Gensis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013))).

[25] *See Halle*, 842 F.3d at 225–26.

[26] *See id.* at 226.

[27] *See Zavala*, 691 F.3d at 537 ("We now hold that plaintiffs must satisfy their burden at this second stage by a preponderance of the evidence."). We consider several factors to determine whether the named employees and the opt-in employees are similarly situated including "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, the degree of fairness and procedural impact of certifying the action as a collective action, and whether plaintiffs have made the appropriate filings with the [Equal Employment Opportunity Commission]." *See Halle*, 842 F.3d at 226 (quoting 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1807 (3d ed. 2016)); *Zavala*, 691 F.3d at 536–37 (identifying factors like "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment" and whether there are "individualized defenses" regarding each plaintiff).

[28] *See, e.g.*, *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 16-1571, 2017 WL 1105236, at *10 (M.D. Pa. Mar. 24, 2017); *Kane v. Ollie's Bargain Outlet, Inc.*, No. 18-2261, 2020 WL 6889195, at *6, *8 (M.D. Pa. Nov. 24, 2020) (suggesting the intermediate standard is used for parties with "advanced discovery positions" and applying it where the parties "engaged in discovery . . . involving significant document production, depositions of three Plaintiffs, exchange of interrogatories, a Rule 30(b)(6) deposition, and declarations being submitted from Plaintiffs and [fifty-six employees] employed by Ollie's across its various locations"); *Swank v. Wal-Mart Stores, Inc.*, No. 13-1185, 2018 WL 2684102, at *10 (W.D. Pa. June 5, 2018) ("[I]n light of the extensive discovery that has been already conducted in this case, the Court will apply the 'more searching standard'—that is, the Court will approach the conditional certification question with an eye toward final certification, and will consider all of the evidence to determine whether the proposed collective plaintiffs are sufficiently similarly situated to justify facilitating notice and proceeding to the final certification analysis."); *Villanueva-Bazaldua v. TruGreen Ltd. Partners*, 479 F. Supp. 2d 411, 415 (D. Del. 2007) (noting other district judges "have adopted an intermediate approach to the 'similarly situated' inquiry when the parties voluntarily engage in discovery [before] a decision on conditional certification" (quotation omitted)).

[29] *See Sloane*, 2017 WL 1105236, at *10 (quoting *Villanueva-Bazaldua*, 479 F. Supp. 2d at 415).

[30] *See Sloane*, 2017 WL 1105236, at *7–10; *but see Bowser*, 324 F.R.D. at 351 (limiting *Sloane*'s application because the parties had exchanged "significant discovery . . . over a period of three years as a result of multiple related cases").

[31] *See Bowser*, 324 F.R.D. at 351 (citations omitted); *Manning v. Goldbelt Falcon, LLC*, No. 08-3427, 2010 WL 3906735, at *2 (D.N.J. Sept. 29, 2010) (using the "stage one" standard even though the parties "conducted" some "discovery . . . and some plaintiffs have opted in" because the parties had not yet formally concluded discovery and the case was not ready for trial); *De Alvarenga Barbosa v. Kellermeyer Bergensons Servs., LLC*, No. 24-5633, 2025 WL 2983157, at *2 (E.D. Pa. Oct. 22, 2025) (declining "to use a heightened standard of review" because "discovery is still ongoing and the case is not ready for trial"); *Tidwell v. YWCA of Greater Harrisburg*, No. 22-908, 2024 WL 1861525, at *4 (M.D. Pa. Apr. 29, 2024) (declining to apply a heightened standard for conditional certification where "the discovery record consists of answers to interrogatories, [the] named plaintiff's deposition, and affidavits from witnesses" and where "[n]o other individuals have joined named plaintiff [before] this motion").

[32] *See* ECF 47 at 16 (explaining Ms. Jackson "has produced [eighty-four] pages of documents; [Triple Canopy and Constellis have] produced over [sixteen hundred] pages of documents, including timekeeping and payroll information for all guards and lieutenants working at [Naval Support Activity Philadelphia]; [Triple Canopy and Constellis have] taken [Ms. Jackson's] deposition; and [Ms. Jackson] has taken [Triple Canopy and Constellis's] corporate deposition [under] Fed. R. Civ. P. 30(b)(6)").

[33] *See* ECF 35 at 10–12 ¶¶ 55, 58, 64, 65.

[34] *See Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536 n.4); ECF 41 at 1 (emphasis removed).

[35] *See* ECF 41-1 at 6 (explaining Triple Canopy and Constellis applied titles from both groups to some employees); ECF 42; ECF 45.

[36] *See* ECF 47.

[37] *See* ECF 41-6 at 164–65, Jackson Dep. at 162:17–163:4 (implying the lieutenants communicated this to other guards by using the word "us").

[38] *See* ECF 41-6 at 188, Jackson Dep. 186:5–12 ("[T]hat was expressed to *us* multiple . . . times that you could put the time you want, but, I mean, you're not getting paid until 5:15." (emphasis added)).

[39] *See* ECF 41-5 at 13, Triple Canopy's Response at 12 No. 9.

[40] *See* ECF 41-5 at 14, Triple Canopy's Response at 13.

[41] *See* ECF 41-3 at 39, Sutkaytis Dep. at 38:14–23.

[42] *See* ECF 41-5 at 8–9, Triple Canopy's Response at 7–8 No. 5; ECF 41-5 at 10–12, Triple Canopy's Response at 9–11 No. 7.

[43] *See* ECF 47 at 10–14, 21 (claiming they pay guards for arming and disarming).

[44] *See Gauzza v. Prospect Med. Holdings, Inc.*, No. 17-3599, 2018 WL 5452746, at *2 (E.D. Pa. Oct. 26, 2018) (explaining the conditional certification inquiry is "'extremely lenient,' . . . 'routinely granted,' . . . and not an appropriate setting to 'weigh the evidence, resolve factual disputes, or reach the merits of [Plaintiffs'] claims'" (quotations omitted)).

[45] *See* ECF 47 at 18–21 (arguing guards are not similarly situated because their pre- and post-shift activities might differ); ECF 47 at 23–24 (arguing guards and lieutenants have different job duties); *Bowser*, 324 F.R.D. at 351 (explaining factors like "the disparate factual and employment settings of the individual plaintiffs" are "part of the analysis during the final certification stage" and are "premature" at the conditional certification stage). We allow notice to the collective "[u]nless patently obvious that a [named employee] 'cannot prevail as a matter of law . . . or that the commonality of generally applicable employment and compensation policies *necessarily* pales in comparison to individualized determinations of liability.'" *See Bowser*, 324 F.R.D at 352 (quoting *Stallard v. Fifth Third Bank*, No. 12-1092, 2013 WL 12308493, at *2 (W.D. Pa. Dec. 12, 2013)).

Triple Canopy and Constellis cite several cases to asking us to deny Ms. Jackson's Motion because she does not identify other guards willing to opt in to the collective or submit declarations from any other guards to show the policy applies to them too. *See* ECF 47 at 22–23 (citing cases including *Wright v. Lehigh Valley Hosp.*, No. 10-431, 2010 WL 3363992, at *4 (E.D. Pa. Aug. 24, 2010)). Their cited authorities do support this proposition. *See, e.g.*, *Wright*, 2010 WL 3363992, at *4 ("Although [plaintiff] makes repeated references to similarly situated nurses, she fails to name a single registered nurse—other than herself—willing to opt-in to the proposed class."). We are instead persuaded by our colleagues emphasizing the lenient nature of conditional certification and noting a named employee does not need to secure opt-in employees at the conditional certification stage. *See, e.g.*, *Bowser*, 324 F.R.D. at 352 (explaining we can conditionally certify a collective "with minimal evidence" and usually should "allow notice and a period of discovery to allow for development of a 'much thicker record' by which to judge the propriety of a collective action" (quoting *Zymczyk*, 656 F.3d at 193); *Gauzza*, 2018 WL 5452746, at *3 ("Defendants' argument that conditional certification should be denied because Plaintiffs have not yet secured any additional members of the collective action puts the cart before the horse . . . . Requiring Plaintiffs to secure those opt-in plaintiffs' participation before notice is issued would entirely defeat the purpose of the conditional certification process by requiring putative members to opt in without having received notice.").

[46] Ms. Jackson also swears another guard agreed Triple Canopy and Constellis's payment policies are not "fair" and a union representative said she "wasn't surprised" Ms. Jackson planned to sue. *See* ECF 41-6 at 155–56, Jackson Dep. 153:19–154:1; ECF 41-6 at 147, Jackson Dep. 145:11–21. This testimony also supports conditional certification. *See Jordan v. Meridian Bank*, No. 17-5251, 2019 WL 1255067, at *8 (E.D. Pa. Mar. 19, 2019) (noting our Court of Appeals "has not directly addressed whether declarations containing hearsay are admissible for purposes of conditional certification" but "[m]any courts in this Circuit have determined that such declarations may be considered" (quotation omitted)). But we also find Ms. Jackson's other evidence satisfies the lenient standard for conditional certification.

11

---

[47] Triple Canopy and Constellis further ask us to deny Ms. Jackson's Motion for conditional certification because she has not identified a policy violating the Fair Labor Standards Act. *See* ECF 47 at 17–18 (arguing Ms. Jackson "presents no evidence of an unwritten, corporate-wide decision to ignore" their policies "strictly prohibit[ing] all off-the-clock work"). But we cannot deny a motion for conditional certification on this ground because it is based on the merits. *See Bowser*, 324 F.R.D. at 353 ("The question of whether or not plaintiff has stated a cause of action, or will prevail, is a merits-based argument that the Court will not entertain at the conditional certification stage.").

Triple Canopy and Constellis also argue Ms. Jackson's Motion for conditional certification is premature because she had not filed a written consent to join the collective at the time of her motion. *See* ECF 47 at 15. Ms. Jackson needed to file a written consent to join the collective. *See Stone v. Troy Constr., LLC*, 935 F.3d 141, 152 (3d Cir. 2019) (explaining "[i]t is an oddity" under the Fair Labor Standards Act, but "a plaintiff who files a complaint in her own name, unless she files a separate written consent, is not treated as consenting to join the very lawsuit she initiated" (citing 29 U.S.C. § 256; *Bonilla v. L.V. Cigar Co.*, 61 F. Supp. 2d 1129, 1139 (D. Nev. 1999)). But she did not need to file one before moving to conditionally certify the collective. *Cf. Stone*, 935 F.3d at 146–47 (noting in procedural history the named employee filed her consent to sue after the district court judge conditionally certified her class); *see also* 29 U.S.C. § 256(a)–(b) (explaining a collective action begins for an "individual claimant – (a) . . . when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed [with the complaint] . . . or (b) *if such written consent was not so filed or if his name did not so appear . . . [when] such written consent is filed*" (emphasis added)). Regardless Ms. Jackson has now filed her written consent. *See* ECF 49. We find no present merit in this argument.

[48] *See* ECF 41-1 at 12–13.

[49] *See id.* at 13–14.

[50] *See* ECF 47.

[51] *See Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536).

[52] *See* ECF 41-7 at 3.

12